IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Carl McGruder #327571, | ) |
|                   Plaintiff, | ) Civil Action No. 6:14-cv-02906-TMC-KFM |
| vs. | ) **REPORT AND RECOMMENDATION** |
| Ofc. Marvin Bryant, Sgt. Shawanda Washington, and Randall Williams, | ) |
|                   Defendants. | ) |

The plaintiff, a state prisoner in Allendale Correctional Institution's Special Management Unit ("SMU") within the South Carolina Department of Corrections ("SCDC"), is proceeding *pro se,* seeking relief pursuant to Title 42, United States Code, Section 1983. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Civ. Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The defendants are SCDC employees at Allendale. The plaintiff alleges that he was subjected to excessive force by Officer Marvin Bryant and that Sgt. Shawanda Washington failed to intervene. The plaintiff further alleges that thereafter the defendants denied him due process by reporting the incident with "misleading, inconsistent, and inaccurate" information. He also complains that Disciplinary Hearing Officer ("DHO") Randall Williams[1] denied him due process by improperly conducting the resulting disciplinary hearing.

The defendants filed a motion for summary judgment (doc. 38) on February 12, 2015. By order filed February 13, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment procedure and the

---

[1] Williams is now the Associate Warden at Allendale (doc. 38-2, Williams aff. ¶ 3).

possible consequences if he failed to respond adequately (doc. 39). The plaintiff subsequently filed a motion for judgment on the pleadings (doc. 45) and a response in opposition to the defendants' motion for summary judgment (doc. 48).

**FACTS PRESENTED**

The plaintiff alleges that on August 16, 2011, he was out of his cell, handcuffed, and waiting his turn to get a haircut. While waiting, he called out to the prison barber about another inmate's haircut and was told by Officer Bryant to "shut up before something bad happens to you" (doc. 1 at 4, comp.). When the plaintiff asked what he meant, Officer Bryant grabbed the plaintiff's handcuffs and ordered him back to his cell. The plaintiff claims he then lost his balance, and Officer Bryant held the plaintiff against the wall with his forearm. Officer Bryant then directed another officer to get Sgt. Washington, the supervising officer (*id*.). Officer Bryant then escorted the plaintiff back to his cell, where he was locked in with his handcuffs still on. The plaintiff was directed to present his handcuffs at the cell door's food service window so they could be removed. Officer Bryant had removed one handcuff when Sgt. Washington arrived. When the plaintiff turned to speak to her, Officer Bryant yanked the handcuffs back to the door window and then removed the other handcuff (*id*. at 5-7; doc. 1-1 at 4, grievance). The plaintiff alleges that his wrist was injured in the incident.

Officer Bryant's version of events differs in that he states that the plaintiff was disrespectful while awaiting his haircut, and, as a result, the plaintiff was ordered back to his cell. As Officer Bryant held onto the plaintiff's handcuffs while escorting him back, the plaintiff was pulling away from him. After he placed the plaintiff in his cell, Officer Bryant gave several directives to the plaintiff to turn around and to be still so that his handcuffs could be removed (doc. 38-4, Bryant aff. ¶¶ 5-8; doc. 38-2 at 12, incident rep.). Sgt. Washington adds that when she arrived at the plaintiff's cell, he would not comply with Officer Bryant's command to turn around. The plaintiff then turned enough to allow one handcuff to be removed, but would not comply with directives to allow the other handcuff to be removed. As Officer Bryant prepared to administer gas, Sgt. Washington told him to

put it away and advised the plaintiff that if he complied, she would listen to what he had to say. The plaintiff then complied, and the remaining handcuff was removed. Sgt. Washington then listened as the plaintiff complained about missing his haircut. She states that the plaintiff did not complain about his wrist until 30 minutes later, when he asked to see her again to say that his wrist was hurting (doc. 38-2 at 14-17, Washington stmt.).

In support of summary judgment on the plaintiff's excessive force claim, the defendants provide the affidavit of Kathy Hill, an SCDC employee in its Health Information Resources Department (doc. 38-5, Hill aff.). Attached to her affidavit are the plaintiff's relevant medical records, showing that he was seen by the medical staff after the incident. The records note the plaintiff had a few scratches and redness on his wrist, but no marks, lacerations, bruising, or swelling. The staff noted that his hand may have had some slight swelling, but that this may have been from how the plaintiff was holding it. The plaintiff was given Motrin, but no x-rays or additional treatment was prescribed (*id.* at 4-5, med. records).

After the incident, the plaintiff was charged with failing or refusing to obey orders, and a disciplinary hearing was held on September 8, 2011, with DHO Williams presiding. The plaintiff was found guilty and sanctioned with the loss of canteen, phone, and visitation privileges for 120 days (doc. 38-2 at 10, disc. rep. & hearing record). The plaintiff complains that the entire process was unfair and in violation of SCDC policies, because the investigation was incomplete, his listed witnesses were not interviewed, his questions at the hearing were not answered, and Sgt. Washington's statement was used against him, even though she was absent from the hearing (doc. 1 at 3-4, comp.).

In response to the plaintiff's due process allegations, the defendants provide the affidavits of Officer Bryant (doc. 38-4), DHO Williams (doc. 38-2), and SCDC employee Valerie Jones (doc. 38-6). Ms. Jones states that she was assigned to serve as the plaintiff's Counsel Substitute since he was housed in the SMU, but the plaintiff refused to meet with her prior to the hearing. As such, she was unable to obtain a witness list from the plaintiff. She also testifies that, though she does not recall this particular hearing, her experience is that the plaintiff's questions would be posed to the witness, and the witness

3

would answer the questions (doc. 38-6, Jones aff. ¶¶ 14-17).  Officer Bryant states in his affidavit that he testified at the disciplinary hearing and answered the questions put to him (doc. 38-4, Bryant aff. ¶¶ 14-16).  Included with the affidavit of DHO Williams are his records from the hearing, including the written statement of Sgt. Washington (doc. 38-2 at 10-17, hearing records).  His records indicate to him that he did not exclude any witnesses or evidence from the hearing; Officer Bryant, as the accuser, attended and testified; he allowed all relevant questions from the plaintiff; and he considered the statement of Sgt. Washington in her absence, since she was not the accusing officer.  He explains that SCDC policy authorizes the admission of written statements from witnesses other than the accusing employee.  He found the plaintiff guilty as charged, basing his decision upon the testimony of the accuser, Officer Bryant, and upon the statement from Sgt. Washington (*id.*, Williams aff. ¶¶ 9-34).

## **APPLICABLE LAW AND ANALYSIS**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).  Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not

rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324.  Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion.  *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

*Excessive Force*

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII.  "Eighth Amendment analysis necessitates inquiry as to whether the prison official acted with a sufficiently culpable state of mind (subjective component) and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).  The objective component focuses not on the severity of any injuries inflicted, but rather on "the nature of the force," which must be "nontrivial." *Wilkins v. Gaddy*, 559 U.S. 34, 39 (2010).  The objective component can be met by "the pain itself," even if the prisoner has no "enduring injury." *Williams*, 77 F.3d at 762 (internal quotation marks omitted). Regarding the subjective component, the key question is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986) (internal quotation marks omitted); *see Iko v. Shreve*, 535 F.3d 225, 239 (4th Cir. 2008).

The Fourth Circuit Court of Appeals applies the following factors when analyzing whether a prison official used force in good faith and not maliciously or sadistically:  (1)  the need for application of force; (2)  the relationship between that need and the amount of force used; (3)  the threat reasonably perceived by the responsible officials; and (4)  any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321.  In *Wilkins v. Gaddy*, the United States Supreme Court held that the use

5

of excessive physical force against a prisoner may constitute cruel and unusual punishment even when the inmate does not suffer serious injury. 559 at 36-40 (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)). However, the Court noted that the absence of serious injury may be one factor to consider in the Eighth Amendment inquiry as it may suggest "'whether the use of force could plausibly have been thought necessary in a particular situation'" and may indicate the amount of force applied. *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7).

The plaintiff's excessive force claim does not rise to a constitutional violation. The record demonstrates that Officer Bryant's handling of the plaintiff's handcuffs was appropriate, both for escorting the plaintiff back to his cell and for removing them. Even if Officer Bryant jerked on the handcuffs, the amount of force described by the plaintiff is minor under the circumstances, particularly in light of his acknowledgment that he turned away from Officer Bryant while his handcuffs were being removed. This determination is verified by the medical records, which showed that the plaintiff suffered only scratches on his wrist and unconfirmed swelling in his hand, for which he was given only Motrin. No further medical treatment was required. Accordingly, the plaintiff has failed to demonstrate that Officer Bryant's actions were outside the bounds of good faith, or that the nature of the force applied was more than trivial, and Officer Bryant is entitled to summary judgment on this claim.

The plaintiff has not alleged that Sgt. Washington used excessive force against him. "Each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (rejecting an argument that government officials can be held liable because they merely had knowledge of or acquiesced in a subordinate's misconduct). As Officer Bryant did not engage in excessive force, the claim against Sgt. Washington as his supervising officer should likewise be dismissed. *See Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) ("Section 1983 will not support a claim based on a *respondeat superior* theory of liability.") (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th

Cir. 1994) (plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury).

### *Due Process*

Prisoners are entitled to certain procedural protections in disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 564-65 (1974). The minimum required protections are: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Correctional Institute v. Hill*, 472 U.S. 445, 454-55 (1985) (citing *Wolff*, 418 U.S. at 563-67). Furthermore, substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence in the record." *Id.* at 454-55. The "some evidence" standard is a lenient one, requiring no more than a "modicum of evidence," and is met if there is any evidence in the record that could support the decision. *Id*. at 455–56. This standard requires "only that the decision not be arbitrary or without support in the record." *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir.1999). As the Supreme Court noted in *Hill*, "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." 472 U.S. at 455–56.

The plaintiff alleges that his disciplinary hearing process was unconstitutional and in violation of SCDC policies because the investigation was incomplete, his witnesses were not interviewed, his questions at the hearing were not answered, and Sgt.

7

Washington's statement was used against him, despite her absence from the hearing (doc. 1 at 3-4, comp.). However, the record before the court shows that the plaintiff received due process. He had the assistance of a counsel substitute, Ms. Jones, who attempted to meet with the plaintiff prior to the hearing to discuss the case and obtain a witness list, but the plaintiff refused to meet with her (doc. 38-6, Jones aff. ¶¶ 6-12; doc. 38-6 at 5, incident rep.). Ms. Jones participated in the hearing with the plaintiff, during which he had the opportunity to present witnesses and evidence, as well as to challenge the witnesses and evidence against him. His accuser, Officer Bryant, testified and answered questions. DHO Williams' records indicate that he did not exclude any offered evidence or witnesses. He properly considered Officer Bryant's testimony, as well as the statement of Sgt. Washington despite her absence from the hearing (see doc. 38-2 at 8, Rule 15.5 of OP 22.14: "Written statements from witnesses other than the accusing employee may be presented as evidence when the witnesses are unable to attend the hearing"). Officer Bryant testified that he directed the plaintiff to his cell, but the plaintiff did not comply; the plaintiff pulled away from him while in handcuffs; and, once in his cell, the plaintiff had to be given several directives to turn around so that his handcuffs could be removed (doc. 38-4, Bryant aff. ¶¶ 5-16). As noted above, Sgt. Washington stated that the plaintiff would not comply with Officer Bryant's directives to allow the handcuffs to be removed (doc. 38-2 at 14-17, Washington stmt.). Moreover, DHO Williams issued a written statement of his decision, citing his reliance on Officer Bryant's testimony and Sgt. Washington's statement as the basis for finding the plaintiff guilty (doc. 38-2 at 10, disc. rep. & hearing record).

The plaintiff alleges that various components of his disciplinary proceedings were in violation of SCDC policy. However, a claim that prison officials have failed to follow their own policies or procedures, standing alone, generally does not state a constitutional claim. *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C. 1992) (holding violations of prison policies that fail to reach the level of a constitutional violation are not actionable under § 1983). As the plaintiff cannot establish a violation of his due process rights, his claim fails on the merits.

Based upon the foregoing, the defendants are entitled to summary judgment on the plaintiff's due process claim.

### *Eleventh Amendment Immunity*

The defendants are entitled to Eleventh Amendment immunity for actions taken in their official capacities. *See Brown v. Lieutenant Governor's Office on Aging*, 697 F. Supp. 2d 632, 635 (D.S.C. 2010) (citing *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995)).

### *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* As discussed above, the defendants did not violate the plaintiff's constitutional rights, so they are entitled to qualified immunity from suit here.

### *Judgment on the Pleadings*

The plaintiff filed a motion for a judgment on the pleadings (doc. 45) on March 23, 2015. The standard of review for a Federal Rule of Civil Procedure 12(c) motion is the same as that under Rule 12(b)(6). *Butler v. United States*, 702 F.3d 749, 751-52 (4th Cir.2012). A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact. *Id.* at 752. The issues litigated here do not lend themselves to disposition by simple consideration of the pleadings alone. Accordingly, the plaintiff's motion for judgment on the pleadings should be denied. To the extent the plaintiff's motion is construed as a motion for summary judgment, the evidence before the court, as discussed above, demonstrates that there is no genuine dispute as to any material fact and the defendants are entitled to judgment as a matter of law.

## **CONCLUSION AND RECOMMENDATION**

Therefore,

IT IS RECOMMENDED that the defendants' motion for summary judgment (doc. 38) be granted and that the plaintiff's motion for judgment on the pleadings (doc. 45) be denied. The attention of the parties is directed to the notice on the next page.

July 24, 2015                                                                       s/ Kevin F. McDonald
Greenville, South Carolina                                            United States Magistrate Judge

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (*quoting* Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk of Court**
**United States District Court**
**300 East Washington Street — Room 239**
**Greenville, South Carolina 29601**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).